May it please the court. Our justice system should hold people responsible for what they do. And no matter whether it's a statutory violation or a common law tort, our courts have always held that no one, when they personally participate in a tort or a violation of statute, can hide behind a company. The Telephone Consumer Protection Act should not be any different. Holding otherwise defeats the aim of the statute. That aim is to deter the robocalls that now, more than ever, invade our privacy and disrupt our lives in an unprecedented manner. James Leininger personally participated in the placement of 3.2 million robocalls. What was his personal involvement? He hired the robocaller, he edited the robocall script, he brought in the celebrity voice, and he paid for the calls. But the district court rejected and refused on the jury instruction that we presented, an instruction that would have allowed the jury to consider whether Dr. Leininger personally participated in or authorized the violations. Now the district court refused plaintiff's instruction because it believed Dr. Leininger could only be responsible for participating or authorizing if first his company, which was a company formed to hold the movie, own the movie, was first held responsible as the principle, as a principle, of the dialing entity, the robocall. Could you address the issue of whether that argument has been waived? Yes, Your Honor. That argument, we believe, has not been waived because we presented an instruction which was legally accurate and supported by the evidence, and the district court refused on the instruction and told us that it was refused. So we did attempt to submit on our theory of the case, and the judge refused that. So based on that, and it wasn't preliminary, it was a final ruling where he would not allow us to submit that. Now to Apelli's point, he was willing to present another instruction, which was a different pursuing, a theory that, frankly, was not something that we had built any evidence for in the case. Did you lodge an objection with the district court? Did we lodge— An objection. We—yes, but we presented an instruction and said we would like this instruction presented. The district court said no, and that was our—our objection was that we wanted that instruction to be submitted. In terms of the instruction that the judge proposed as a preliminary instruction, we did not request that he give that instruction. We believed, and I think it's accurate under today's circuit law, that if we requested that instruction, that we would thereby be waiving that issue and not be able to present this appeal to you. Is it clear from the record what theory you were using for your—your claim, and whether the instruction actually given was consistent with the theory actually pursued? Yes, I believe it is, Your Honor. The theory that we were actually pursuing, and I think that it's an interesting point, I don't think that we could have waived this issue because the judge's instruction and our instruction that was refused are not mutually exclusive. So if you believe that it matters who you're acting for, in, for instance, if you're acting for the company that owned the movie, or if you're acting for some other company, and therefore you need to add that to the instruction, we had in this case a person who was acting for a dual purpose. On one hand, there's no doubt he was acting for the company that owned the movie to promote the movie. On the other hand, he was acting for his own personal political agenda. And on that basis, during the middle of the trial, the robocaller testified on the stand that he had a partnership with Dr. James Leininger to impact the elections. And that was aside from what was going on with the movies. And so at that point in the case, we were clearly pursuing that. And that's what our instruction was for. It was him— Your instruction was denied, but was there an instruction given that you objected to? No, there was not an instruction given that we objected to. That we did not request that the judge give an instruction that involved Courage 2012, the entity that held the movie. So the issue with that is that, if you believe that the judge's instruction was accurate, it's not mutually exclusive of the instruction that we requested and was refused. Okay? And the reason that's the case is that if it matters who you're acting for, there's no doubt, and there's evidence in the case, based on the testimony of the robocaller, that he was also acting on his own personal behalf, that Dr. Leininger was. He wasn't just acting for the movie. So in that case, an instruction that says you have to find a company responsible before you can hold him responsible for what he's personally doing on his own personal behalf, those aren't mutually exclusive. So theoretically, you could have submitted our instruction and the district court's proposed instruction. And that nullifies any waiver argument. So I think that, you know, appellees don't challenge, at least very strongly, the idea that you can have personal liability under the Telephone Consumer Protection Act. And I think that's borne out very nicely by all the district courts who have so held that you can do that. I think it's also fairly clear from several of those district court cases that you don't have to be an officer or associated with the company that actually pressed the button to dial to millions of people's houses. That is evidenced by many cases where there are people who are held responsible persons, but they were not affiliated with the company that did the robo-dialing. So that being clear, our instruction, which was free of what we call and what the district court called corporate shield protection, was legally accurate and supported by the evidence in this case, no matter how you look at it. Of course, our argument is that you should never have that language in there about a company anyway, because hundreds of years of case law, whether it's a common law tort or statutory violation, has held that it simply does not matter. You don't get any protection because you're committing a tort in the name of an entity. Now, entities matter for contractual purposes. There are corporate formalities. We're certainly not denying any of that. But when it comes to a tort, committing a tort, a statutory violation, what you'll see, and you'll see this in the Eighth Circuit's precedent, in circle cases, for instance, and then they cite to a number of other cases that discuss the common law on that issue. And you might ask, well, why are we looking to the common law? Don't we just look to the statute? Well, in this case, and in all cases, really, when you are trying, when Congress is legislating, they're putting something out there, this statutory violation, they're assumed to understand and know the common law, the simple common law principles, like agency, like someone being responsible for their own actions, rather than having to go through a company. And so, in the absence of Congress, in the TCPA, saying, well, we don't think there should be agency, or we don't think there should be personal liability, they're assumed to know that's out there, and that's assumed to be part of it, if there's silence. So, very, very briefly, I've spoken about waiver a little bit here. Counsel, before you go on to the next argument, I'd like to explore the issue of standing. Since the prior panel of this Court decided that the appellants had standing, there's intervening U.S. Supreme Court case law, the Spokio decision, and this Court has held that its prior analysis of standing is no longer valid. How does that affect the standing analysis in this case? That's a great question, Your Honor. It's not a question I'm prepared to answer today. I'm certainly familiar with Spokio. I'm familiar with the standing analysis that was performed in this case, and I'm certainly happy to brief that or provide a supplemental letter on that issue. But I apologize, I cannot speak intelligently, at least, about how that would impact what the Eighth Circuit did previously. So we've talked about waiver briefly, and I would just like to emphasize on that point that it's fundamentally a different theory what the district court was proposing as to what we wanted to propose. And as I said before, we did not want to invite error. We didn't want there to be any error in the instructions, and so we weren't going to request an instruction that we thought was error. Briefly, another part of this is the damages issue. And I think that the appellee on that issue spends time talking about how these were just phone calls and how, you know, sort of downplaying, mitigating what happened. And I want to put that in a different perspective very briefly. 3.2 million households received this phone call. There are about 126 million households in the United States. That's one out of every 40 households that received this call. This is unprecedented, the scope of this violation, this invasion of privacy. And put it in another perspective, there are only 2.3 million households in the scope of this is something that's shocking. And Congress certainly, I think, understood that when they wrote the law, when they wrote $500 per violation. And one other way to put this is that what if tomorrow somebody robodials 64,000 people? Do they get the benefit of the district court's $10? Or do they pay 32 million? Then you can take that back a step to $500. Where does it end? So $500 is either okay, as Congress said it was okay, or it's not okay. And I see that I'm into my rebuttal time, so I will step aside if there are no questions. Thank you, Mr. Carney. Thank you. Mr. Schwalb. Good morning, Your Honors. May it please the court. I represent Dr. Leininger. I'm going to use hopefully six or seven minutes and cede the balance and the time to counsel for CC advertising. Appellants are urging this court to announce a new vastly expanded standard of personal liability under the TCPA for non-dialers. The language of the TCPA does not support that type of expansion. The FCC's interpretation of the statute does not support that type of expansion. And candidly, the common law of tort does not support that expansion. How has the FCC interpreted it? What language do they use? The FCC talks about two types of liability, direct and vicarious. Direct being limited to the person actually doing the dialing, referring to the language of the statute as the sender of the call. It limits vicarious liability, being held responsible for somebody else's actions, to principles of agency, actual agency, apparent agency, or ratification. That's the way the FCC defines the scope of vicarious liability for non-dialers. The question that's presented in this case is a theory that has developed in the common law when corporations are deemed to be the principal in a principal agency relationship. District courts, all principally in unpublished opinions, have wrestled with the question of whether or not the owners or operators of companies can avoid liability if their company is the principal and they're not held personally liable as the owners or the actors of the company. That's where the concept of corporate officer liability has come from. And what the plaintiffs in this case tried to do was to cherry pick some of the language from the unpublished opinions of district courts. There's one significant published opinion from the Western District in the Ann Blasvac's case that started this trial court level about not allowing corporate form to be an impediment because corporations could not have sufficient assets to pay judgment and these owners of the corporations were reforming new corporations and continuing with the robocalling campaign. So the trial judges were saying under the principle of corporate officer liability, if the company is responsible for causing the calls to be made, the owners and officers of the company that effectively caused that to happen can be held personally liable. That's very, very different than what this case was about. And what happened in this case was the trial judge was asked to, by the plaintiffs, to cherry pick some of the language from that corporate officer liability standard that had evolved in the common law, but not all of it. The five cases that the plaintiffs suggested supported their instruction to the trial judge did not what we did. And five of those cases, all of them involved a corporation serving either as the principal of the dialer, being the dialing company, or the company that hired the dialing company. There was no case that supported the theory that the plaintiffs asked the trial judge to accept, which was a brand new theory. Now to the waiver point, which is critical on this, Judge Weber came to the charging instruction and said, these are proposed instructions. I've looked at this issue, but I haven't made up my mind yet. What is it that you want to tell me about this jury instruction? I'm open to hearing. Before that instruction discussion started, the plaintiffs came to court and said, we've abandoned our theory against three or four of the other defendants in this case. In fact, we've abandoned our theory against Courage 2012, which is the company that owned the movie. We've abandoned our theory against the marketing company, Veritas Marketing Group and its owner. We want to dial in only on Dr. Leininger. We've made that decision, and we want you to give an instruction court that eliminates the corporate officer standard as it's developed in the law. Judge Weber said, I haven't made up my mind yet. Are you sure that you're taking this position? If I don't give the instruction that I've proposed, would it be different? And plaintiffs' counsel said, we don't know. They abandoned the theory, and therefore, the trial judge never had to give an instruction on corporate officer liability. And that's principle to the waiver argument that we make. It was incumbent upon the plaintiffs, if they wanted to advance this theory, to object to the instruction suggested by the trial court and try that theory. Now, it's not the case they didn't get a chance to hold Dr. Leininger personally liable. They went on a full-throated agency attack on Dr. Leininger for all of the reasons in the brief and all of the reasons that counsel suggested today on the theory that Dr. Leininger did control the robocaller, that he had a direct personal agency relationship. Dr. Leininger is principal robocaller as agent. The law recognizes that as a potential theory. The district court allowed them to advance that theory, gave the instruction to the jury. The plaintiffs were constrained in no way in terms of what type of evidence they could They made a full-throated argument on agency. They abandoned the corporate officer theory. And the court, the jury ruled that they didn't meet their burden. And there's no basis given that way the trial played out in this case to give them a do-over on a, that's what they're asking for, a do-over, try the case again on a theory that they abandoned in front of the trial court the first time around. Counsel, what is the significance then of the fact that the judge explicitly gave a refusal to that proffered instruction? The, I think what Judge Weber was doing was making very clear so that it would be clear to this court that the instruction that the plaintiffs were asking him to give, he was not willing to give. Now after the trial was over, the plaintiffs filed a motion to correct or supplement the record because in the record was not Judge Weber's initial proposed instruction, which he was prepared to give. They recognized the record was incomplete and they asked the judge to supplement the record. And Judge Weber's post-trial order is very instructive on this point. He makes it very clear, I did not refuse to give this instruction. You rejected it. The plaintiffs rejected it and therefore it doesn't belong in the record. The trial judge was never asked or required to make a ruling on that. Now incidentally, it's important to know that we of course argued, and it's in our brief, that the plaintiffs came to the trial only about agency on Dr. Leininger. The only theory that they were announcing for vicarious liability in their pre-trial filings, in the pre-trial conference, in their proposed jury instructions, in their verdict form, was an agency theory. They tried their case on an agency theory, but then at the end tried to switch and go into a corporate officer theory, albeit not with the full corporate officer theory, just the parts that they liked. We objected to that. The trial court allowed them to have a trial on a second theory. And the trial judge allowed them even to get to the jury on a second theory and was prepared to give them that second theory instruction. They abandoned that for strategic reasons, tactical reasons, probably the same reasons why they dismissed all four other defendants that they had tried the full case against. I don't think there's any basis for this court to give them a do-over, and particularly when giving them a do-over requires such a vast expansion of the law. The cases that the appellants cite to this court do not support what they're asking this court to do in terms of expanding personal liability under the TCPA. What they're asking for is limitless, potentially limitless exposure, which ignores what Congress has said. And I want to urge this court, if the court's not already aware of it, to take a third circuit decision in City Select that was decided earlier this year, 885, Fed Third, 154. Even appellants cite in their brief that City Select is a instructive on-point case. The third circuit in that case is on all fours with this case. And it's in that case that the third circuit is expressing grave reservations about whether or not the corporate officer liability theory exists at all, given the language of the TCPA and given the way common law has developed. I see my time is up. If there are no questions for me, I'm going to cede the rest of my time to CC Advertising's counsel. Thank you. Mr. Schwab. Ms. Young. Good morning, Your Honors. So I'm here to talk to you about the other issue that was in this case, which was the reduction of damages that the district court undertook following the judgment in this case. What gives a court authority to reduce statutory damages? So I think that's the $60 million question in this case, right, is that what the plaintiffs want to say is that $500 is $500, that the court has to look at whether or not only that $500 statutory damage is constitutional and non-violative of the due process. What we in fact argue is that the district court properly considered the aggregate amount, and we have a couple of cases that we've reached for. What I think I want to start with is that they have talked about the punitive damage. Let's just, is it clear that that authority is not in the statute itself? Right. The statute itself is for $500 minimum. The statute in fact doesn't contemplate class action lawsuits. The statute in fact contemplates single individual claims that are brought by plaintiffs. It provides them a $500 damage award. It contemplates them going to small claims court and being able to present on a per individual basis for those claims. So no, it doesn't consider the question of whether or not these could be aggregated in a class action because the statute itself doesn't contemplate class action. And that gets to the heart of where we're at on the TCPA and the aggregate of these damages. The question then becomes, does using the Rule 23 class action rule turn this into something that instead is punitive in nature and is open to a due process violation? The district court found that it did. And I think that if you look at the cases that are out there, the cases that have been cited throughout our brief as well as the appellant's brief, there is a tension there that is created by the transforming these individual actions into these aggregate massive class action lawsuits. Here the plaintiff this morning said, he emphasized that there were 3.2 million calls made. On the other side, what I'd like to emphasize is of those 3.2 million, 2.8 million people did not answer their phone call. And we ended up with a $1.6 billion judgment, which is, and again, I argued in front of the district court, this is a damage award that would put out of business most companies that exist in the United States. And at the same time, there is no actual analysis in this case or required in the statute to So it doesn't take into consideration that Gabe, when he actually made these phone calls and created this call campaign, believed that it did not violate the TCPA. The district court was clear in its rulings that he believed that this was a good faith call. This was a six day campaign that was put together. And the law that he was basing this on was in flux. This was a dual purpose call. His intention in putting this call out, he had done these political campaign calls for some time. He was creating a database. The idea that he had is that if he created a database where he identified the political leanings of various households, then he could take that to politicians so they could target particular individuals that were interested in hearing the messages that they had to give. And so that's what Gabe was interested in. That's what his business was about. That's where most of his data had been brought from. And so what he thought that he had, number one, was consent from those prior political calls, where he had asked whether he could call generally about religious issues. What is our review standard for the district court's decision to reduce the damages? Again, Your Honor, I think that that's something that there's not a strong answer for. I think that the law in this area is... Would you consider it a fact finding? I don't think that it should be a fact finding, but I think the court can consider the fact that there was insufficient fact finding in the district court to support the award. I also think that the district court can consider the facts that are actually in the record as it stands. And here, the plaintiffs, in their closing arguments, in fact, acknowledged the fact that this campaign was put together with the intent to impact the 2012 election. They said that to the jury in their closing argument. I don't think that they can stand up today and say that it had nothing to do with politics. Yes, but wouldn't the application of the due process clause to the TCPA be an issue of law? I'm sorry, I didn't hear... Wouldn't the application of the due process clause to the TCPA statute be an issue of law? I think that it is an issue of law. Again, because I think that whether or not you're looking at the $500 versus the aggregate amount is a question of law. What we're talking about and bringing in these facts, what I'm trying to do in emphasizing the small number of calls that answered this call and the good faith belief that Gabe had when he made these calls is to highlight the impact that is had when you look at simply the $500 and you don't look at the aggregate. Because again, somewhere is lost in there the fact that this was a six day campaign that he thought he was doing properly. And by that single violation of the TCPA, his businesses were put out of business, as would almost any business in the United States. So what we're saying is that, and again, as you said with Spokio, the law that he was relying on is still somewhat of an open question. There are still open discussions about it. I was going to ask, you mentioned that you referred to earlier, you referred to the fact that the district court took into account the fact that the law was in the state of flux. What's the state of the law today? Well, I mean, again, I think that there's some open question, both as to the Spokio. So in other words, whether or not these calls were a violation of the TCPA, I think is still, we've been functioning under the law of the case that this circuit court handed down saying that in fact that there was a violation. And so that's what the law of the case was. But as you said, the law has progressed beyond what the Eighth Circuit found back then to the point that is that still, if we were looking at it today, would that still be the same law of the case? In other words, if this case were brought today, it would not survive a motion for summary judgment? I mean, that would be my position. And I think that, again, what that does is what we're looking at was a $1.6 billion award. He was looking at it with a defendant who had clearly made a good faith basis not to violate the TCPA, and that only through the aggregation of the individuals did this become a due process violation, that this was an opt-out class. We actually had a jury member show up who didn't realize that he had not opted out of class because he said he got notification of the class, and he threw away the notification. Obviously, that jury wasn't impaneled, but that's what you're talking about. How many of these claims actually would have been brought individually? Would it have been the $3.2 million, or would it have been something along the lines of the 400,000 that received the call? Here, his system worked. Of the 400-plus thousand people that received this call, over 300,000 of them actually chose to listen to the commercial, which means that they went through the entire survey, the entire political survey, to get to that call. So he really was targeting people that were interested in the materials that were given him. And so, again, you'd have to ask, what would the individual claims have looked like had this not been brought as a class action and aggregated in the way that it was? Thank you, counsel. Thank you. Mr. Carney, your rebuttal. Thank you, Your Honor. I wanted to address a few of the questions you brought up. With the FCC, the FCC's decision on this does not address in any way personal liability. It's just not a matter of discussion. They only talk about agency in that decision and some of the questions that were asked, they were answered with a lot of respect. But I think what we did not do is we did not abandon our claims against Dr. Leininger. The claim in the case was for violation of Telephone Consumer Protection Act, and we pursued that to the jury against Dr. Leininger. Our instruction was refused, and that instruction is in the record at our addendum, pages 13 and 14. And with that, I also wanted to talk about the motion that we filed to – we called it a motion to correct the record. We wanted to make sure that what the judge proposed was in the record. And he's not put it in the record. He's denied that motion. But we wanted to be able to show that to this court to show you that it's a different theory so that we could avoid this waiver argument at this point in time. So that's why we filed that. It wasn't that our instruction wasn't in the record. It's in there, and it says refused on it written there. It was so we could get the judges proposed in there so we could show you what we were dealing with and the situation we were in. So City Select has mentioned the Third Circuit opinion. I think that is a good opinion. I concur that that is one that's good to look at. Now, they don't actually decide the issue of whether there can be personal liability because they say it's not before the court. But the concurrence in that opinion goes through in great detail and makes exactly the argument that I'm presenting to you right now, whether there should be personal liability. And the other thing about City Select is that's where we got our instruction from. So City Select actually tried personal liability against someone. We took our instruction from there and put it in this case. So it is effectively affirming our instruction. Now on damages, this is a strict liability statute. Okay? So the issues we tried at trial were limited. We didn't try it. You don't have to show somebody intended to do it. You don't have to show any harm. You don't have to show all these things that are now being used against us to say it should be reduced. So effectively what we have is a bunch of untried issues that are now, we've not presented any evidence on this. We've not had the opportunity to say, well, this does harm people. This does harm the country. This was intentional. You were trying to go through a loophole. We didn't present any of that evidence. So for now, for us to, the district court afterwards to say, well, these are mitigating circumstances, first of all, that's not in the statute. There are no ways to reduce an award or, it's 500, and Congress certainly knows how to do that. They, in other statutes, say, these are the mitigating factors. These are the enhancing factors. That's not here. So that shouldn't be something used here. Now questions were asked, can we reduce statutory damages awards? The only authority out there is that Williams case from the early 1900s. And in that case, and I think this is very key, that case does not talk about aggregate awards. They don't. They analyze in that case whether an award between $30 and $50 for a particular offense comports with due process. And that's where they established that standard. Then the next case, there's a, I think it's Warner Brothers, an Eighth Circuit case, talks about Williams. And in that case, they say in dicta, well, you might be able to consider the aggregate award. But that's not the holding in that case, and that's not where they're going. So it's our position that looking at the aggregate award is not even the lens to look at it. You have to look at it on a per basis, $500 per. Is that okay or is that not okay? Well, maybe this, you know, as Judge Colton wrote for the court in the capital records, which is a copyright case, if and when a jury returns a multimillion dollar award for non-commercial online copyright infringement, then there will be time enough to consider it. Is this the case in which it's time to consider a six, how much, again, what was the award? $1.6 billion? It would have been $1.6 billion, but it was never entered. It was only entered as a $32 million, reduced to $10 per. So should we look upon this as the case in which to? I think certainly. Well, obviously, your answer is no. The question is to what extent? Well, I think you can certainly look at it, but I think the answer should be looking back to Williams and seeing what did Williams actually say we could do. And I don't think Williams gives courts sort of the authority to look at it in the aggregate. One wonders how the Supreme Court would look at a case like this. That's a fair question. And, of course, you don't want to find out. Well, I shouldn't put it that way. Put aside that remark. Yes, Your Honor. Thank you. Thank you, Mr. Carney. Thank you also to counsel for the appellee. We appreciate your presence and the argument you provided to the court in a fascinating case. We will take it under advisement and render decision in due course.